**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

JOHN WILLIAM LOW,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. 1:13-cv-00887-BAM

ORDER DENYING PLAINTIFF'S APPEAL FROM THE ADMINISTRATIVE DECISION

## I. INTRODUCTION

Plaintiff John William Low ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II and supplemental security income payments under Title XVI of the Social Security Act.[1] The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.

Having carefully considered the parties' arguments, the Court finds the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record and based upon proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal.

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

## II. BACKGROUND

### A. Overview of Administrative Proceedings

On July 15, 2010, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income alleging disability beginning December 15, 2006. AR 155-164. Plaintiff alleged disability due to mild retardation, high blood pressure, diabetes, and nerve damage in the feet. AR 177. Plaintiff's application was denied initially and on reconsideration. AR 81-88; 92-99. Subsequently, Plaintiff requested a hearing before an ALJ. AR 100-102. In a decision dated June 29, 2012, the ALJ found Plaintiff did not have an impairment or combination of impairments qualifying Plaintiff for disability at Step Three of the sequential evaluation process. AR 15. The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. AR 1-6. Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g) and 1383(c).

### B. Medical Record[2]

The medical evidence relevant to this appeal concerns evidence relating to Plaintiff's IQ. On October 21, 2003, examining physician Linda Kane, M.A. administered the Wechsler Adult Intelligence Scale-III examination to Plaintiff. AR 170. Plaintiff obtained the following scores: a verbal IQ score of 71; performance IQ score of 72; and a full scale IQ of 69. *Id.* On April 26, 2011, Linda Kane administered the WJ-III achievement test. AR 489-491. Test results indicated Plaintiff's oral language skills were low average when compared to the range of scores obtained by others at his age level. AR 491. The results also indicated Plaintiff's academic skills were low average; his fluency with academic skills was low; his reading skills were low average; and his mathematics/math calculation skills were low. *Id.*

On February 17, 2011, Steven C. Swanson, Ph.D., performed the psychiatric consultative examination in this case. AR 465-471. Dr. Swanson administered various psychological tests, including the Wechsler Adult Intelligence Scale – 4th edition. AR 466. Plaintiff had a verbal comprehension index of 85; perceptual reasoning index of 81; working memory index of 80; and processing speed index of 84. Plaintiff also obtained a full-scale IQ score of 79, placing him in the

[2] The entire medical record was reviewed by the Court. However, the Court discusses only the medical evidence relevant to the issues on this appeal.

eighth percentile. AR 468. Dr. Swanson these scores were "=/- 5" in providing some range for error. *Id.* Dr. Swanson also noted the corresponding classification for Plaintiff's test scores would place him in the borderline intellectual functioning range. *Id.* Reviewing physicians R. Paxton, M.D., also concluded the medical record did not support a finding of disability at step three.[3]

**C. Plaintiff's Background and Testimony**

Plaintiff was born on January 2, 1971, and was forty-one years of age at the time of the hearing. AR 30. Plaintiff is six feet, two inches tall, and weighs approximately 400 pounds. AR 31. Plaintiff completed the twelfth grade; however, Plaintiff was placed in special education classes since the second grade. AR 33. Plaintiff also attended some "city college" in the disabled students program. AR 33.

Plaintiff lives with his brother, who handles financial matters for the both of them. AR 37-38. Plaintiff does not have a driver's license and has never driven. AR 32. Plaintiff takes the bus to get from place to place. *Id.* Plaintiff goes grocery shopping, and does basic chores such as light cleaning and dish washing. AR 39.

**E. The ALJ's Decision**

On June 29, 2012, the ALJ issued a decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act. AR 20. After considering each step in the sequential evaluation, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since July 15, 2010, the application date (20 CFR 416.971 *et seq.*);

2. Plaintiff has the following severe impairments: diabetes, hypertension, obesity, and a learning impairment (20 CFR 416.920(c));

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

[3] The Commissioner also argues reviewing physician and Carmen Bird, M.D., concluded Plaintiff did not qualify at Step Three. This is inaccurate. Dr. Bird's report shows "there is insufficient evidence to determine a mental disability," and did not opine in any on Plaintiff's restrictions. AR 482-83.

4. Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c), but he can never climb ladders, ropes, or scaffolds; can never work at unprotected heights; and can perform only simply, repetitive tasks;

5. Plaintiff is unable to perform any past relevant work (20 CFR 416.965);

6. Considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can perform jobs existing in significant numbers in the national economy (20 CFR 416.969 and 416.969(a));

7. Plaintiff has not been under a disability, as defined in the Social Security Act, from July 15, 2010, the date he applied for supplemental security income (20 CFR 416.920(g)).

## III. STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's finding that a claimant is not disabled. This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla," *id.,* but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the Court may not substitute its judgment. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.1996).

To be disabled, a claimant must have a severe medical impairment capable of lasting at least twelve months, such that in light of his medical and vocational limitations he cannot engage in either his past work or in any work existing in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3). The claimant will be found disabled if he either satisfies all the elements of this definition or has a medical condition which is defined as disabling under the Commissioner's "listings." *See* 20 C.F.R. 404.1520. The Commissioner prescribes the order in which the ALJ considers these factors, and instructs the ALJ to end his inquiry as soon as he reaches a dispositive finding, either in that the claimant fails to satisfy an element of disability or in that he satisfies a

listing. This sequential process is intended to help ensure that determinations are uniform, administratively efficient, neutral, and carefully documented. 20 C.F.R. 404.1594(b)(5); *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999) (sequential process embodies "presumptions about disabilities, job availability, and their interrelation" which "grow out of the need to administer a large benefits system efficiently").

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir.1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n. 5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.; Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).

## III. DISCUSSION

### A. Issue On Appeal

On June 12, 2013, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 2.) One issue is presented on this appeal: whether the ALJ erred at Step Three of the sequential evaluation process. Specifically, Plaintiff argues the ALJ erred in finding that Plaintiff did not satisfy Listing 12.05(C) for mental retardation.

**B. The ALJ's Step Three Determination Under Listing 12.05(C)**

**1. Legal Standard**

At step three of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in the Appendix to federal regulations. 20 C.F.R. § 416.920(d). Conditions set forth in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) (emphasis added). The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). If a claimant shows that his impairments meet or equal a Listing, he will be found presumptively disabled. 20 C.F.R. §§ 416.925– 416.926; *see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1221–22 (9th Cir. 2010).

The claimant bears the burden of establishing a prima facie case of disability under the Listings. *See Thomas v. Barnhart,* 278 F.3d 947, 955 (9th Cir. 2002). To "meet" a listed impairment, the claimant must establish that his condition satisfies each element of the listed impairment. See *Tackett v. Apfel,* 180 F.3d 1094, 1098–99 (9th Cir. 1999). To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the listed impairment. *Id*. at 1099–1100.

**2. Listing 12.05(C)**

Plaintiff contends that the evidence establishes that his impairment meets or equals the criteria of Listing 12.05(C). Under Listing 12.05(C), plaintiff must be found disabled if he shows the following:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairments before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. At issue is Subsection C: "C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related

limitation of function." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05. Thus, plaintiff would meet the listing if (1) he has a valid IQ score between 60 and 70, (2) the evidence demonstrates or supports onset of the impairment before age 22, and (3) he has a physical or other mental impairment imposing an additional and significant work-related limitation of function.

At the third step of the sequential evaluation process, the ALJ determined as follows:

> He does not satisfy paragraph C because he does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. During the consultative examination, Mr. Low obtained a full-scale IQ score of 79. On a different occasion, he achieved an IQ score of 69, but because he has exhibited substantial mental functioning inconsistent with an IQ of 69, I find that specific test invalid. Mr. Low attended classes at Fresno City College and earned above a 3.0 grade point average for several terms. He can manage his finances and take care of a dog. Furthermore, his demeanor at the hearing was coherent and articulate. Therefore, Mr. Low does not have a valid IQ score that would satisfy the requirements of paragraph B. [sic]

AR 15-16. Plaintiff argues the ALJ's rejection of Plaintiff's IQ score of 69 was in error.

**3. Valid IQ Score**

The first prong of Listing 12.05(C) requires a valid verbal, performance, or full scale IQ of 60 through 70. *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir.1986). In this case, Dr. Linda Kane assessed a full-scale IQ score of 69. AR 170. However, Dr. Steven Swanson assessed a full scale IQ score of 79. AR 466. Courts in the Ninth Circuit have held that where multiple or conflicting IQ scores are available, the operative score for purposes of determining whether a claimant's impairments meet or equal Listing 12.05(C) is the lowest "valid verbal, performance, or full scale IQ" score the claimant has received. See *Fanning*, 827 F.2d at 633 (holding that where a claimant underwent IQ tests in both 1982 and 1983, higher scores obtained in 1983 did not render lower scores obtained in 1982 invalid for purposes of listing 12.05(C)); *Ray v. Chater*, 934 F.Supp. 347, 350 (N.D.Cal. 1996) (finding that "it can be inferred that when multiple IQ scores are available the Regulations prefer the lowest score"); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of

these in conjunction with 12.05.”). Accordingly, Dr. Kane’s Full Scale IQ of 69 falls within the listing and plaintiff meets the first prong of Listing 12.05(C).

The ALJ here did not accept the lower score. Although an ALJ need not accept, in all cases, the validity of an IQ score a claimant offers to prove intellectual disability, “the Ninth Circuit has not yet decided what facts the ALJ may use in determining the validity of a[n][IQ] test result [.]” *Wedge v. Astrue,* 624 F.Supp.2d 1127, 1131 (C.D.Cal.2008). Courts outside the Ninth Circuit permit an ALJ to consider several factors in assessing the validity of test results, such as evidence of malingering or feigning results, daily activities inconsistent with the alleged impairment, and psychologists' opinions that are supported by objective medical findings. *Id.* at 1131–32.

Some courts have said that the score can be questioned on the basis of “other evidence,” but have not discussed exactly how other evidence impacts the validity of the score itself. *See, e.g., Clark v. Apfel,* 141 F.3d 1253, 1255–56 (8th Cir. 1998); *Popp v. Heckler,* 779 F.2d 1497, 1499–1500 (11th Cir.1986) (per curiam). Other courts have been more explicit and have indicated that in questioning a score the ALJ must find some empirical link between the evidence and the score. *See Brown v. Sec'y of Health & Human Servs*., 948 F.2d 268, 270 (6th Cir. 1991*); see also Markle v. Barnhart,* 324 F.3d 182, 187 (3d Cir. 2003) (activities of claimant were not inconsistent with scores); *Muse v. Sullivan,* 925 F.2d 785, 789–90 (5th Cir. 1991) (per curiam) (test conditions suggested invalidity). And yet other courts have held an ALJ may disregard an otherwise qualifying IQ score based on the claimant’s activities of daily living. *Muncy v. Apfel,* 247 F.3d 728, 733 (8th Cir. 2001) (“An ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a nontreating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior.”); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that a valid IQ is not conclusive when the score is inconsistent with other evidence in the record and claimant's daily activities); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3d Cir.1992) (finding IQ score alone insufficient where, inter alia, claimant “maintain[ed] a job for most of his adult life”).

In an unpublished opinion, *Thresher v. Astrue*, 283 Fed.Appx. 473, 475 & n. 5 (9th Cir. Jun. 19, 2008),[4] the Ninth Circuit stated that, "We do not doubt that an ALJ can decide that an IQ score is invalid." To invalidate the IQ score, an ALJ must state that the IQ score is "invalid" under Listing 12.05, which shows the ALJ considered the Listing, and the ALJ must state why. The *Thresher* court noted, without adopting, that while the Ninth Circuit has "never decided what information is appropriately looked to in deciding validity ... [o]ther courts have been more explicit and have indicated that in questioning a score the ALJ must find some empirical link between the evidence and the score." *Id.* at fn. 6. In *Thresher*, the Court held that the ALJ erred in failing to reference Listing 12.05 and "come to grips with the specific requirements of that section."

Here, the ALJ specifically referenced Listing 12.05 and "invalidated" the IQ score. The ALJ further stated reasons why Plaintiff did not fall within Listing 12.05. The ALJ thus satisfied the threshold requirements of *Thresher.* The Court now turns to whether the ALJ stated sufficient reasons for finding the IQ score invalid.

The Court finds that the ALJ's stated reasons, coupled with substantial evidence in the record, adequately reject the validity of Dr. Kane's IQ score of 69. To determine whether the ALJ's decision is supported by substantial evidence, the reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012.) An ALJ may assess the reliability of IQ scores by examining the record. See, e.g. *Castle v. Commissioner of Social Sec*., 2014 WL 3943411 (S.D.Cal. 2014). In addition, the Regulations allow an ALJ to consider the narrative reports accompanying Plaintiff's IQ scores. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a) (Since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation).

Here, the ALJ invalidated the lower IQ score based in part upon the "substantial mental functioning" demonstrated by Plaintiff. The ALJ was faced with conflicting Wechsler Adult Intelligence psychological tests. One test, performed in 2003, yielded a full scale IQ of 69 and the

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

other test, performed in 2011, yielded a full scale IQ score of 79 (+/- 5 pts). The ALJ found the lower score invalid based upon the scope of Plaintiff's current functioning. The ALJ relied upon the Plaintiff's ability to mentally function as demonstrated by successfully taking and completing college based classes over an extended period of time. The Record demonstrates that the classes included a wide variety of classes, such as reading comprehension, reading skills, survival training, arithmetic, computer skills, job training, among others. While plaintiff argues that these classes were pass/fall and are for learning impaired individuals, the ability to complete classes over an extended period of time – from 2003 to 2009, substantiates the ALJ's finding. These classes, in part, provide substantial evidence that claimant's mental functioning is inconsistent with the level of impairment claimed.

Further, the ALJ relied upon specific activities of daily living by reviewing the totality of the Plaintiff's functioning. The ALJ specifically mentioned managing finances[5] and ability to take care of a dog. (AR 12-3, p.17.) The ALJ also relied upon the scope of daily activities for discounting Plaintiff's level of mental disability. The ALJ stated that Plaintiff takes public transportation, washes dishes, vacuums, cleans the house, rides a bicycle, takes care of his own personal needs, and makes his own meals. *Gomez v. Astrue*, 695 F.Supp.2d at 1058 (Suggesting that an ALJ should not find that "other evidence" renders an IQ invalid without explaining how that evidence impacts the validity of the score.) The ALJ stated that the scope of his daily activities shows Plaintiff has mild limitations.

The ALJ also relied upon the state agency psychological consultant's findings. The ALJ accepted the validity of Dr. Swanson's IQ testing, his conclusion that Plaintiff suffers from borderline intellectual functioning, and his full scale IQ score 79, with a range of "+/- 5." The consultant examiner reviewed the evidence and concluded that Plaintiff had a mild limitations on social functioning and mild limitations in daily living. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (Where a record presents conflicting medical evidence, it is "solely the province of the ALJ to resolve the conflict" and to decide which medical opinions to credit.) It is for the ALJ to resolve the conflicting medical evidence.

[5] Plaintiff reported on a "Functional Report" (dated May 15, 2011) that he is able to pay bills, handle a checking and savings account, and count change. AR 12-7, p.30-35. To the contrary, Plaintiff testified his brother takes care of all the financial matters. AR 38. This conflict in evidence is left to the ALJ to resolve.

Here, the ALJ provided specific, legitimate reasons regarding the accuracy of Plaintiff's IQ scores to support his decision. The ALJ specifically stated that the lower test score was "invalid." The ALJ invalidated the lower test score because it was inconsistent with the Plaintiff's demonstrated activities and abilities as reflected in the record as a whole. By expressly mentioning Listing 12.05 and explaining why he found it did not apply, the ALJ met his burden to explain why the IQ score was invalid based on other evidence in the record. *See Thresher*, 283 F. App'x at 475 (remanding for clarification because ALJ did not mention Listing 12.05).

Plaintiff argues that the ALJ improperly relied upon the "sit and squirm" rationale. The ALJ found that Plaintiff presented at the hearing with a "coherent demeanor." The Ninth Circuit has specifically rejected this sort of "sit and squirm" jurisprudence. *See, e.g., Perminter v. Heckler*, 765 F.2d 870 (9th Cir. 1985) ("The ALJ's reliance on his personal observations of Perminter at the hearing has been condemned as 'sit and squirm' jurisprudence. Denial of benefits cannot be based on the ALJ's observation of Perminter, when Perminter's statements to the contrary, as here, are supported by objective evidence.") (internal citations omitted.) Although the ALJ's reliance on his personal observations provides little, if any support for his conclusion, *see Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir.1984), the inclusion of such personal observations does not render the ALJ's decision improper, *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir.1999).

The Court find the ALJ properly set forth reasons, supported by substantial evidence in the record, to find Plaintiff's low IQ score within the 60 to 70 range was invalid. Accordingly, Plaintiff does not meet the requirements of Listing12.05C. As Plaintiff does not meet the Listing, he is not impaired within the meaning of the Social Security Act.

///

///

///

///

///

///

///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff John William Low.

IT IS SO ORDERED.

Dated: **September 30, 2014**

/s/ Barbara A. McAuliffe

UNITED STATES MAGISTRATE JUDGE